## Lancaster v. Isaacs, et al.

(Decided December 12, 1916.)

### Appeal from Jackson Circuit Court.

1. Boundaries—Location of Patent—Evidence.—Evidence examined and held that it sustains the contention of appellant as to the correct location of an old patent. which calls for no monuments except trees, all of which are gone except the stump of one walnut tree called for as a corner and verified by two junior patents calling for the walnut as a corner, and one other patent calling for a line of the old patent and supported by testimony that the walnut stump was recognized by adjoining land owners as such corner.

2. Boundaries—Location of Patent—Evidence.—A location that is not made by actual survey upon the land of the courses and distances called for in a patent but that results from simply making a plat of the calls in the patent and then attempting to place this plat upon a map made of a survey of the creeks and branches within the boundary as shown upon a copy of the plat accompanying the original survey upon which the patent issued, without evidence that the branches and creeks were accurately shown upon the copy of the original survey, cannot be accepted as a correct location of the patent.

J. R. LLEWELLYN and HUGH RIDDELL for appellant.

A. W. BAKER and W. H. CLARK for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This action was instituted in the Jackson circuit court by appellant, Jesse A. Lancaster, against appellees, G. P. and E. P. Isaacs, alleging that they were the owners of two described tracts of land, one containing twelve acres and the other 45 1-2 acres, both within and parts of a tract of 1,012 1-2 acres granted by the Commonwealth of

Virginia to Ebenezer Brooks in 1788; that appellees had procured a patent from the Commonwealth of Kentucky for these two small tracts of land in 1909, which appellant seeks to have cancelled upon the ground that the entry, survey and patent are void under section 4704 of the Kentucky Statutes, which provides that every entry, survey or patent is void so far as it embraces land previously entered, surveyed or patented.

Appellant also seeks to recover $842.00 damages for timber cut and removed from said land by appellees.

Appellees in their answer denied that appellant was the owner of any part of either of the two tracts described in his petition, or that either of same was included within the Brooks' 1,012 1-2-acre grant, and alleged that they are the owners of the land under both paper title and by prescriptive right.

Appellant tracing his title back to the Ebenezer Brooks' Virginia grant, has shown better title to the land than appellees, who claim under a junior grant, if the land in controversy is covered by the old Brooks' grant.

The case was tried out below and is argued here upon the one question of whether the tracts of land in controversy are within or without the Brooks' patent, and the decision of this question depends upon whether the survey and map made by James Winn for appellant, or the survey and map made by C. A. Baker for appellees correctly locates the Brooks patent

·The lower court, accepting the Baker survey and map, which located the two tracts in controversy without the Brooks boundary, except a very small portion of the 45 1-2-acre tract, adjudged to appellant only the small portion of the two tracts thus located within the Brooks boundary, and gave him judgment for $22.00 damages for eleven trees cut by appellees from the land awarded to him.   Seeking to reverse that judgment he has appealed.

The Brooks patent issued in 1788 described the land as located on the south fork of Station Camp Creek, giving the calls and distances of the eleven lines which inclose the boundary, and calling for certain trees at each of the eleven corners, none of which trees is now standing; but a walnut stump near a cliff is claimed by appellant as being the sixth corner described in the Brooks patent as marked by a walnut and sugar tree; that this walnut stump is the sixth corner called for in the Brooks

patent is essential to the correctness of the Winn survey and map, and that this is his corner is testified to by several witnesses who, however, state that they did not know of their own knowledge that it was such corner, but they had been so informed by an old resident now dead and so regarded it. As further evidence that this walnut stump is the walnut referred to in the Brooks patent as one of the two trees marking the sixth corner of that survey, two other patents are introduced, one to a seventeen-acre tract to Robert Sparks, and another to a one hundred and fifty-acre tract to James K. Harris, both of which call for the walnut and sugar tree corner of the Brooks patent.

Mr. Winn in testifying for appellant and to sustain his survey and map states that beginning at recognized corners in each of these two patents, and running the lines of same according to calls and distances to the walnut and sugar tree corner, brought him to the walnut stump near the cliff claimed by appellant as a corner to the Brooks land.

Another patent, to Barney Sparks for one hundred and fifteen acres, also calls for one of the lines of the Brooks land, and beginning at a recognized corner of this one hundred and fifteen acre patent and running its lines to the Brooks land, Winn testifies, locates the Brooks line as he has located it.

Mr. Baker admits that the Brooks land as located by him does not touch any of these three patents which call for the Brooks line by about one hundred poles. Mr. Winn testifies that accepting the walnut stump as one of the corners of the Brooks patent and then running its lines according to its calls and distannces, he found thirty-seven marked trees along the lines; that these marked trees were found along each of the eleven lines except two, the fourth and the ninth.

Mr. J. D. Spurlock also made a survey and map attempting to locate the E. Brooks land and the two tracts in controversy here, and his survey and map locates the walnut and sugar tree at the same place as located in the Winn survey, and corresponds with the Winn map so far as the location of the south fork and war fork of Station Camp Creek is concerned, and in most other respects, except that his map shows a strip of vacant land about thirteen poles wide between the 45 1-2-acre tract in con-

troversy and a 65-acre Allan Flynn patent, whereas the Winn map shows these tracts adjoining.

There is also in the proof a map of the Brooks tract and the Seminary tract, showing how and where they overlap, made by J. B. Hind in 1859 in an action then pending in the Jackson circuit court, in which he says he began his survey at the "sugar tree and walnut, old marked trees," a corner to the Brooks patent, and that he was directed in making this survey and in locating the lines of the Brooks patent and the Seminary tract by H. Lunsford in the presence of Thomas Lunsford, and the evidence here shows that appellees are the owners of the seventy-five-acre boundary embracing the Seminary tract under conveyances from Hiram Lunsford, and Jesse Lunsford, sometimes known as Thomas Lunsford.

It is further shown in the evidence by the deposition of A. W. Quinn, who at one time owned the whole of the Brooks tract, that the Seminary tract does overlap the Brooks tract, and that in order to avoid trouble with the parties owning the Seminary tract and in actual possession of same within the interference, when he sold the Brooks tract to Levy Flynn, grandfather of appellee, and under whom he claims, he reserved seventy-five acres on that end of the Brooks tract and afterwards conveyed it to those under whom appellees claim. This evidence in our judgment is conclusive that a considerable portion of the Seminary tract is as shown by the Hind survey and map within the Brooks patent, and the Winn map locates the Seminary tract in exactly the same way as does the Hind map, whereas the Baker map does not locate the Seminary tract at all, but locates the Brooks tract in such way that it would barely, if at all, touch the Seminary tract.

There are other evidences in the record of the correctness of the Winn survey that we do not deem necessary to recite here, since we believe that what we have stated above is sufficient to conclusively establish the Winn location of the Brooks patent, even if there had been more satisfactory evidence to support the Baker survey than we are able to find in the record.

Mr. Baker testifies that he did not attempt to run the lines of the Brooks patent, since appellees, for whom he was making the survey, did not accept the walnut stump as a corner, and there were no other known corners. The following is his testimony of how he located this patent:

"I located the Brooks 1,012 1-2 acres as I have it on my map by the location of the creeks and branches and by the plat of the original survey, which copy I have from Frankfort. I saw from the plat from Frankfort that it was essential to have the creeks and branches surveyed first in order to locate this Brooks survey correctly.

"There was not a single corner standing on this Brooks survey as I could find and there was no point that could be shown me where a corner once stood and undisputed, so after making a correct map of the location of the creeks and branches, I then platted the Brooks survey on the same scale that I made the map with the creeks on and platted the Brooks lines with 3 1-2 degrees variation.

"I placed my map of the Brooks survey on top of the map that I made of the creeks and moved the map of the Brooks survey so as to make the lines cross the creeks and branches as near as possible the same as this plat did which I have from Frankfort."

From which it can be seen that the only support for his location is an assumption that the creeks and branches were accurately placed upon the copy of the plat of the original survey, which he had in his possession, furnished him by the State Auditor, whereas the description of the land accompanying the plat does not call for a single one of the branches or for the creek itself in any way, except to state that the boundary lies upon the waters of the creek, and besides, of the three copies in the record of this old plat of the original survey, no two of them show the creek and branches in the same way; in fact, upon the west side of the main branch in one of these copies, three more branches are shown than in the others; and, even if this method of locating the lines of a patent can be sanctioned, by the testimony of Mr. Baker himself, it is shown that the main stream running entirely through the boundary as located by him, is much nearer the western boundary lines than as indicated upon the plat of the original survey. But we do not think it necessary to go into details to show that the Baker location is incorrect because we are unable to approve this method of locating a boundary of land, which is entirely novel to us and entirely unsupported by any authority so far as we know.

For the reason above given we conclude that the appellant is the owner of the two tracts of land in controversy, and it results therefore that he was entitled to

recover of appellees the value of the trees cut and removed by them from the whole of the two tracts, which according to the testimony was 416 trees. These trees were cut by Lee Congleton, who purchased them from appellees at $2.00 a tree, which the evidence shows was a reasonable market value of same.

Wherefore the judgment is reversed with directions to enter a judgment in favor of appellant in accordance herewith.